25-5157 National Treasury Employees Union v. Donald J. Trump, President of the United States, et al., et balance. Case No. 25-5184 American Foreign Service Association v. Donald J. Trump, in his official capacity as President of the United States, et al., et balance. And Case No. 25-5303 Federal Education Association, et al., v. Donald J. Trump, in his official capacity as President of the United States, et al., et balance. Mr. Kuppel, for balance, Donald J. Trump, in his official capacity as President of the United States, et al. Mr. Shah, for Applee National Treasury Employees Union. Mr. Walta, for Applee's Federal Education Association, et al. Mr. Hearn, for Applee American Foreign Service Association. Good morning. Good morning, Your Honors. May it please the Court, I'm Josh Kuppel for U.S. Government Defendants, and I would like to reserve seven minutes for rebuttal. Plaintiffs challenge the President's exercise of discretionary national security authority expressly granted by Congress. Their claims fail for multiple reasons, and the District Court committed numerous errors in the course of issuing the preliminary injunctions under review. I'd like to start where the Court always must, with jurisdiction. The District Court lacked jurisdiction because Congress created an exclusive statutory review scheme under which claims arising under the collective bargaining statutes have to be channeled to the FLRA or the FSLRB with direct review in the Court of Appeals. There's no doubt the plaintiff's claims arise under the FSLMRS and subchapter 10 of the Foreign Service Act and require evaluating the actions of the President against the requirements of the statute. And that is exactly the type of claim that Congress intended to channel to the FLRA. And this Court held as much. In American Federation of Government Employees v. Loy, in that case, the Undersecretary of Transportation issued an order pursuant to other statutory authority, providing that TSA screeners would not be eligible for collective bargaining. A union filed a petition in the FLRA seeking representation in elections. The FLRA denied that petition, dismissed the petition for lack of jurisdiction because of the Undersecretary's order. The plaintiff... Any of the unions doubt that that was an appealable order? No, there was no reason to doubt that was an appealable order. No appeal was taken. No appeal was taken, correct. That's correct. Instead, the union filed suit in District Court, and this Court held that the District Court lacked jurisdiction because the claim had to be routed through the FLRA. Is that the sequence that the authority dismissed the petition before the union filed in this Court? I believe they were happening concurrently. I thought they were more or less simultaneous. That's right. They were more or less simultaneous. But in any event, the Court held that the District Court lacked jurisdiction because any review had to come from the FLRA order. The Court also held that even if the FLRA order... You know, to get to your question just a moment ago, the Court held that even if the FLRA order hadn't been appealable subject to judicial review, nonetheless, the CSRA would preclude, the FSLMRS would preclude review in the District Court. But here, there is a way for... There are multiple ways for plaintiffs to bring their claims to the FLRA with judicial review after that. So, as to 7111, the statute says that the authority will proceed if it has reasonable cause to believe that a question of representation exists. If they don't find reasonable cause and, I suppose, deny the petition, the statute doesn't seem to address whether that kind of decision is appealable. Do you know whether it is? A final order would be, but a dismissal, much like a GC declination decision, might not be subject to review. I don't know whether that... I'm not sure whether, if the FLRA determines that there's not a hearing, whether that is subject to judicial review. But I think that whether that's... First of all, there's several other routes to judicial review here. This is focused on 7111, because what Loy said, the situation where it doesn't matter if it can be reviewed is if you're subject to the explicit provision that says there is no review of certain categories, and 7111 is not in that category. So, this seems analogous to the problem that you arguably face with EOP charges, which is we don't know if there will be a final decision reviewable even by the authority, much less the court, right? We don't know. Well, there are suspending cases in front of the FLRA, including ULP cases. And so, in a couple of those cases, at least, the FLRA has issued show cause orders asking why the FLRA should not dismiss for lack of jurisdiction because the president's executive order has taken the agencies outside the scope of the FSLMRS. Plaintiffs could explain that they believe the FLRA has jurisdiction because the executive order is invalid. Has the authority, have any of those cases progressed far enough so that we would know what the authority is going to do in terms of whether they actually will resolve a challenge to the EO? The unions here have instead asked the FLRA to hold the cases in advance pending this litigation or pending, they didn't specify exactly what. They could have, so they... Has the authority done that, held those cases in advance? Yes. So, the authority is waiting for the court. Yes. But, again, you know, if this court decides this case belongs in the FLRA because it arises under the FSLMRS, the FLRA would presumably continue with those cases. If it dismisses the cases because the agencies are no longer subject to the collective bargaining provisions, this court could review that dismissal order. And do you represent a number of these agencies? What was their position before the FLRA as to whether the FLRA has jurisdiction to resolve this question? Their position is that the, well, is that the FLRA lacks jurisdiction over the pending cases because the executive order is valid. Are they, are you saying, will you say that the government will not argue that the FLRA lacks jurisdiction over a challenge to the EO? We don't think that the FLRA lacks jurisdiction to at least consider its jurisdiction over the case, right? Just like a district court has jurisdiction to consider its jurisdiction. And in your submissions to the FLRA, you advanced that position. Did they affirmatively have the ability to resolve their own jurisdiction? I'm not certain whether we've told the FLRA that, you know, until now. You can see the concern, right? If you tell us and we think that the FLRA has authority and you turn around and argue that they don't. I know that we have not told the FLRA that it doesn't have authority to consider the validity of the executive order. We still have our arguments on the merits that certainly that just like a district court can't review the executive order, the FLRA can't review it for certain reasons on the merits. But in terms of jurisdiction, it is the government's position that the FLRA has jurisdiction to consider whether these agencies are properly excluded from the provisions of the FSLMRS. So in your view, 7111 isn't really all that important. Do you think this question should be teed up in a UOP case? I think it could be teed up in a number of different cases, whether a 7111 petition. There are currently negotiation or negotiability cases pending before the FLRA where agencies, you know, did not agree to negotiate on a certain issue. Those cases are currently pending. And so while they don't, on their merits, raise the issue of the executive order, the FLRA would have to consider the validity of that order in determining its jurisdiction. Those could come to this court or another court of appeals or through a ULP proceeding. I think we were told that the Foreign Service Union does not have any matter pending before the authority. I'm sorry. That the Foreign Service Union does not have a matter pending before the authority. That's correct. And so they could file a, there's a 4111 petition, or they could raise- It takes us back to 7111. Right. Yeah. Or they could raise an unfair labor practice claim. But the option you just described does not apply to- Not the pending cases. They don't have pending cases before the FSLRB. But again, they could raise an unfair labor practice claim. They raise this question while the general counsel might decline to file the complaint. But that is a feature of the statute that is present in every unfair labor practice claim. It's not particular here. And this court has never held that the concern that the general counsel might decline to file the complaint gives rise to district court jurisdiction. That's a feature of the statute that Congress created. If the consequence of that is that there's no forum for their other arguments, their constitutional arguments or also various arguments and so on. We've never said that that's a matter of indifference.  We've never said go rely on an unfair labor practice proceeding, even though if no complaint issues from the GC, you'll never have a forum for your other claims. In Askey v. Trump in 2019, the plaintiffs there were challenging executive orders. And this court said that one of the routes to judicial review would be to file an unfair labor practice complaint. The same objection could have been raised that the general counsel would decline to file. But as you must acknowledge, I think, from what you said earlier, that if they take that route and no complaint is issued, they have no way of getting to court. That's correct. And therefore, there is no forum for their other claims. So this court has said on multiple occasions in Yount v. Broadcasting Board of Governors, for example, then Judge Kavanaugh said what you get under the CSRA is what you get. Then Judge Roberts said in Ashcroft v. Graham that what matters is not whether the plaintiff actually has a remedy, but the comprehensiveness of the statutory scheme. So we recognize that the comprehensiveness of the CSRA may mean that there's no forum for various claims. But have we ever held that that's true for ultra vires claims? And it seems that in many of those cases, the court either assumes that ultra vires claims would have some other avenue of district court or other review. I mean, how far does the comprehensiveness go? Is it the government's position that the comprehensiveness of the CSRA just means that sometimes there's no forum for the claim, even if it's an ultra vires claim? Yes, I think that all of these cases are necessarily ultra vires claims because if there were a cause of action, then the district court would have jurisdiction. So I think that the situation where a plaintiff ends up in a case where they might have a remedy in FLRA, but they might not, but there's no cause of action in district court, I think it's necessarily an ultra vires claim. So, yes, I think that, and I don't think there's anything special about an ultra vires claim. Congress can certainly preclude district court jurisdiction over an ultra vires claim. In fact, an ultra vires claim only arises if there is no such preclusion of judicial review. I thought it was interesting you said at the beginning that this is a channeling type of statute. And that's not usually how our cases talk about these particular statutory schemes. We often talk about channeling for the Tucker Act and some other things. And so I wonder, I mean, should we think of these schemes as channeling schemes? I'm not sure whether it's a jurisdictional, maybe it's better expressed as an implied preclusion of district court jurisdiction because Congress has said that the way to raise this claim is in FLRA and in direct review in the Court of Appeals. I'm not sure whether the channeling label really applies here. Well, I think the Thunder Basin factors suggest that there's, you know, even where Congress has created a separate scheme, there may be certain claims that fall out of the scheme. You know, there's sort of a more granular analysis that courts have to do, which, you know, for instance, in the Tucker Act claims, it's sort of an on-off switch. Like, either this is a contract claim that goes to the Court of Federal Claims or it's not. Whereas the Thunder Basin factor is also jurisdictional, but we do a different type of analysis. And I'm wondering if the analysis in Thunder Basin should look more like what we do in the Tucker Act context. I'm not familiar. I'm not as familiar with the analysis in the Tucker Act context, so I don't want to compare, you know, this to that and see how different it should be. You haven't had to litigate one of the 800 Tucker Act claims? Not yet. But, you know, it is certainly the case that Fausto makes clear that people may not have claims under – may not have a remedy under the CSRA. Nonetheless, the CSRA precludes district court jurisdiction over that type of claim. The FSLM IRS, of course, is part of the CSRA. No doubt that there is a comprehensive scheme. And the question in this case is comprehensive as to what. So it's comprehensive when you have a grievance, maybe comprehensive when you want an election or you have a dispute about bargaining unit definition. But the district court's view was that this case is about basically a threshold question that there's no indication Congress wanted FLRA to decide because it's essentially a gateway question. Are you subject to the statute at all or not? And so what is your response to that specific question rather than saying it should be sort of changed on to some other dispute that is not really the core of this case? So I've got a couple responses. First, it was the exact same situation in Aftey v. Loy. The question there was a threshold question whether the TSA screeners had collective bargaining rights under the FSLM IRS. They had filed a petition for an election, and the defense was you're not entitled to any bargaining. These folks don't need an election. But nonetheless, the question whether they're entitled to any bargaining is the same, and that is the type of claim that FLRA can adjudicate, whether it arises through the 7111 procedure or through a pending case or through a ULP claim. It's the type of claim that Congress envisioned the FLRA to decide. The Congress gave the FLRA authority to administer the provisions of the FSLM IRS. The FLRA's specialty is interpreting the provisions of the FSLM IRS, and that's exactly what this case calls out for. It arises under the statute. It requires interpreting the statute. This is squarely within the FLRA's wheelhouse. It seems like the unions would say, and the district court would say, for the collateralism and expertise factors, it has to at least be relevant that the FLRA has never decided a case like this in terms of an ultraviarious challenge to a presidential executive order. And we didn't consider explicitly the jurisdictional question, but this court did in Reagan. So we would at least be saying that case was wrongly decided, right? So in Reagan, this court didn't consider the issue of jurisdiction. So it shouldn't be taken as a holding on the jurisdictional issue because it's mostly a drive-by jurisdictional ruling. And in terms of collateral... There's no ruling at all, is there? There's no mention, is there? Right. That's right. There's no mention. Right. It would be mostly kind of an implicit drive-by jurisdictional holding that there was jurisdiction, but it didn't address jurisdiction at all. The question is, there are obviously many provisions the FLRA applies every single day. And here we have a provision. It's never considered. So why isn't that relevant on the collateralism and expertise factors? So, first of all, the fact that it hasn't considered this before is simply because plaintiffs don't usually challenge the validity of an executive order. The FLRA has issued this kind of so-caused order in the past. If the plaintiff unions had contested the validity, the FLRA would have had the opportunity to consider this kind of claim. The FLRA does have expertise in this area, though. It regularly adjudicates, or in the course of its regular business, it has to adjudicate whether particular employees perform national security work because those employees can't be part of a collective bargaining unit. And that question has obvious relevance or analogy to the question presented here. The FLRA also has expertise in interpreting the provisions of the FSL-MRS. And even if the FLRA doesn't have any greater expertise than the district court, nonetheless, the Supreme Court has made clear in Elgin, for example, that Congress chose to direct claims through the administrative body. And this court can apply, or this court or another court of appeals, at least under the FSL-MRS, not necessarily this court, but a court of appeals could apply its judicial expertise on direct review from the FLRA's decision. Mr. Koppel, did you cite any case in which the FLRA has, in fact, determined whether parties were eligible for representation by virtue or ineligible by virtue of doing national security work? Whether the agencies were or whether employees were? In which the FLRA adjudicated a question of national security employment. So, there are cases, yes, we do cite a case in our, I believe it's in our opening brief, in which the FLRA adjudicated whether employees were engaged in national security work. Basically. The question, excuse me. You said they do this regularly. So, this is on page 26 of our opening brief in NTU. U.S. Department of the Air Force and AFI, local 2924, considered whether employees were engaged in work that directly affects national security. So, that arises under Section 7112B6, which precludes, which bars including employees in a collective bargaining unit if those employees are engaged in intelligence, counterintelligence, investigative, or security work which directly affects national security. That's a different type of question, though, than the question of whether the president has determined that certain agencies involved in national security and intelligence, because the provision at issue here is about a presidential determination. It is a different question. Just whether those agencies are, in fact, national security agencies. Yes, it is a different question, but the point is that the FLRA has expertise that it can bring to bear. And, again, even if it didn't, however, the CSRA and FSLMRS makes clear that Congress intended claims arising under the statute to be channeled through the administrative review scheme, and then the court can apply its expertise. I mean, both sides here have a little bit of a problem because the jurisdictional question and the merits diverge. So, the government is saying you need to go through the statutory scheme, but if you prevail on the merits, it will mean that the FLRA and the board have no jurisdiction, and then parties could appeal to this court. But then, obviously, on the other side, they have the same problem, which is they need to get jurisdiction in district court. They need to assume that the EO is valid. So, how do we think about that? It's a very unusual type of circumstances. I mean, usually jurisdiction and merits kind of line up. Yeah. And I'm wondering how best to think about that question. Because we usually say we look to the plaintiffs as though they will prevail on the merits, but that's usually in part because we don't want to prejudge their merits claims at the jurisdictional stage. Right. I think the question to ask is what statute does their claim arise under? And what they are alleging is that the president's executive order has violated Section 7103b1. That provision is part of the FSLMRS, of course, and Congress intended that claims arising under that statute generally would be directed to the FLRA. If plaintiffs allege they have collected bargaining rights under some other statute, there wouldn't be any question that FSLMRS doesn't channel those claims or direct those claims, like the channeling analogy, to the FLRA. Right. But their claims arise under that statute that the FLRA is charged with administering and interpreting. So, if there's a difference here, as Joe Trout suggested and you acknowledged, from a case like the one you cited on page 26, it's that the authority would first be confronted with a question as to whether it can second guess the president. That's right. There's going to be this question whether, you know, we think the claim is properly before the FLRA, the FLRA has jurisdiction. But whether it's the FLRA that has jurisdiction or the district court, either way, there is going to be this question then of whether the tribunal, the FLRA or the court, can review the president's determination on the merits, even if it determines that it does. What is the appropriate level of deference? So, certainly, all those questions will play out. Right. And whether they say yes or no, we can't do anything about it, that will be an appealable. That's right. So, if the FLRA said, we've got jurisdiction to decide this question, or even if it said we don't have jurisdiction to decide this question, that's appealable to this court. And this court or another court of appeals certainly could review the validity of the executive order. Then, once it gets to the merits, that, again, is a separate question. As Judge Rouse suggested, we often assume the merits in order to determine standing. Do we do it in any other context? I don't think that this court has to necessarily apply that rule here. Again, the question, you know, I think the court simply needs to say what statute is this claim arising under. It's not a perfect fit for the, you know, the rule that Your Honor is referring to about assuming the merits for purpose of standing. But, again, I don't think that that's – that's not the way that we're arguing. So, it's the answer that you're not familiar with that principle being applied outside of the standing? That's correct. Okay. Yes. I guess also on this question of thinking about the plaintiff's arguments about the EEO, is that question better conceptualized at Thunder Basin Step 1 about the existence of the statutory scheme, or is it better conceptualized at the three factors in Step 2 of Thunder Basin? Does it matter? I don't think it matters. I'm not sure. If Your Honor thinks that the FLRA has jurisdiction on, you know, if you prefer – whichever way you prefer to analyze the question, I do think that the Supreme Court has – and this court have generally been clear that the CSRA precludes district court jurisdiction, that FSLMRS precludes district court jurisdiction. And the three factors are kind of – Step 1. Yeah. Is the statutory scheme – like the existence of the statutory scheme precludes district court jurisdiction. Right. Yes. I haven't actually heard of the Thunder Basin being divided into Step 1 and Step 2 like that, but I think that's right, that whether or not you have preclusion of judicial review, collateral, expertise, those factors, I don't necessarily think you need to get there because Fausto decides the question. Elgin decides the question. AFSCME v. Trump, AFSCME v. Secretary of the Air Force, AFSCME v. Loy, I think that these cases already hold that the FSLMRS precludes district court jurisdiction, regardless of whether there's a remedy for plaintiffs through the FLRA, although, again, here we think there is. But, you know, so I don't think – Your rule would be it precludes jurisdiction over any claim that involves interpreting any provision of the FSLMRS, essentially. I don't want to address a situation that's not before us because there might be situations that I, you know, haven't thought of. But I think that generally that is correct. I mean, when this court said in AFSCME v. Loy that where there's an exception to judicial review, that doesn't mean you can go to district court. For example, that applies – I think that rule would apply equally where, for example, the relevant claim is a ULP claim and Congress has said that the general counsel's decision whether to file a complaint is not subject to judicial review. That doesn't mean that because you can't necessarily bring your ULP claim all the way up to court of appeals that, therefore, there's district court jurisdiction. You know, where there's not a remedy, nonetheless, the FSLMRS precludes district court jurisdiction. Again, though, I don't think the court needs to get into that here because there is a route for judicial review. In Loy, this court used the term arguably, right, arguably within the ambit of the authority. Any reason to think that's been superseded in a later case or an action? I haven't focused on that question. I'm not certain, you know, but nonetheless, I think that – It's certainly the standard you would want. Yes, it's certainly the standard we would want, but I don't think that the court has to address that because I think there's a very easy way to say that the FLRA has authority here, has jurisdiction here through the multiple routes that we've identified. I'm happy to answer other questions about jurisdiction. I know I'm over time. Also, I'm happy to address the merits. Do you have a question on the merits? Yes. If we were to reach them, I'm just wondering, so the district court here found that the presumption of regularity was rebutted. And so what is the right standard of review for this court reviewing that finding? So I think that the court can apply a de novo standard of review in cases where the court has – the court has on occasion said that there's a clear error standard. But in those cases, there was really a dispute about the facts. The facts here are fairly clear. What the district court relied upon, what the plaintiffs relied upon are a fact sheet, OPM guidance, and the words, the scope of the executive order itself. There's no dispute over what those three documents say. The question is how do those documents – whether those documents reflect the requirements of the statute, reflect the policy underlying the statute, and that's a legal question. So I think that in reviewing the district court's holding here that the presumption of regularity was rebutted, this court should apply de novo review. So the standard of review turns on what sort of regularity is at issue in a particular case? What kind of questions are raised, whether they're factual questions or legal questions? And I think that's consistent with the U.S. Bank site that we – the U.S. Bank case that we cite in our FEA reply brief. And so if the question is largely a legal one, then what is the court considering about regularity? If, for instance, there's a determination that the president – you know, the president determines that these agencies are, you know, national security related agencies, but also that there is animus, as the district court said, does that – you know, does that sort of mixed motive rebut the presumption of regularity? I don't think so. That's what the district court said. Right. That the presence of what he characterized as animus overcomes regularity. So there seems to be a legal question about regularity, but then I guess I'm just wondering how far does the presumption of regularity go? Does the decision have to be both consistent with law and sort of reasonable, like free from animus? Like, you know, what's encompassed in regularity? We don't say very much about this in our cases. Yeah, the court does. And I think that here, though, the question is whether the president's determination met the requirements of the statute. And if the president made the two determinations that are laid out in Section 7103b.1, then whether he was also motivated by animus, which we certainly dispute, but even if he was, you know, as the district court found he was, that doesn't rebut the requirements of the statute were met. And so the president's executive order should be upheld. It seems that at least in parts of the district court opinion, the district judge was making a factual finding that the president did not in fact make the two national security determinations. Is that how you understand the district court's ruling? I don't think so. I think that it's more of a legal determination that because the reasons expressed in the fact sheet were in the district court's mind not consistent with the national security requirements laid out in the statute, that therefore the president must not have acted in accordance with the statute. I think it is that requires interpreting the fact sheet and how it applies to the requirements of the statute. Regardless of the standard of review, you know, I certainly think even if this court does review that rebuttal of presumption of regularity for clear error, nonetheless, we think that the district court clearly erred. Also, I just want to put down a marker that, of course, we don't think the court even has to get there because there is no ultra-virus claim against the president when he's acting pursuant to discretion entrusted to him by Congress. And that's exactly what happened here. Well, if we just stay on the merits for a minute, below the government argued based on this Oak Ridge case, which the government read to define national security to include any work that affects the productivity or economy of the United States. And that argument is noticeably absent from the appellate briefs. So are you sort of – do you think that that is an unreasonable reading of the national security term in this provision of the statute? I don't think it's necessarily an unreasonable reading. But as Your Honor – as our briefs make clear, as your question makes clear, I don't think the court has to get there because I think that under any reasonable reading or understanding of the term national security, the president was acting within his discretion and reasonably. And even if this court did think that the president acted with some overbreath, I think you can't establish an ultra-virus claim because the president acted with overbreath or overly cautiously in protecting national security. What if their claim was that the president used a definition of national security that is facially overbroad? That kind of sounds like exactly what ultra-virus review is for. We would be asking, do we know what definition he applied and can we tell if it's obviously beyond the terms of the statute? Isn't that comfortably within what ultra-virus review is? I think that there is – I think that the court would have jurisdiction, I guess, or putting the jurisdiction issues aside. I think that would be an ultra-virus claim. I don't think the plaintiffs could establish their claim or prove their entitlement to relief on the merits because of some – even if they're – because the ultra-virus standard, of course, is a heightened standard. It's not arbitrary and capricious review. It's not contrary to law review. I think it's giving us a very deferential review. The question is if the president uses and it is clear that he used an utterly unreasonable definition of national security, then a court should step in and grant an ultra-virus claim, right? So, I still think that there is this question. I think that where Congress has granted the president's discretion – Assuming the reviewability question. Assuming the reviewability. Yes, I think Your Honor is correct. But certainly here, it is not plain on the facts. It is not plain from the record that the president applied an improper definition of national security. Let me ask you about that. So, this relates to Oak Ridge. And in the fact sheet and elsewhere, it sort of just says explicitly things like the Department of Treasury is excluded because it obviously affects the economic strength of the United States. Or the IRS collects all of our revenue and affects everything the United States does. So, that's national security work. That reads – one reading of that is that they have – the president applied a reading under which any employee that does anything that promotes the general welfare of the United States is doing national security work. I don't think that's the proper reading of the fact sheet. I think that the president was focused on national security here and national defense. The Secretary of the Treasury is a member of the National Security Council under statute. So, I think it's not unreasonable. This is the government's explanation. Treasury performs national security work because it exists to promote the economic and productive strength of the United States. You may be totally right that Treasury does other things that could fit within a reasonable definition of national security. But if there's one thing a court can do, you just agreed with me, that we can try to find out what definition the president applied. And if it is an utterly unreasonable definition, we can't – in fact, have to step in and set aside this order. So, I apologize. I'm not sure where Your Honor was quoting from in that – if that was fact sheet or – applying this definition, which is anything that affects the United States economy is national security work. And now you've abandoned that on appeal. So, for one thing, plaintiffs have not established that the fact sheet was written by the president, reviewed by the president. I don't think you can necessarily attribute the statements of the fact sheet, certainly not parsing the fact sheet at that level to the president. What we know from the president is what's in the executive order. This court made clear in Aftey v. Reagan the president didn't have to explain his determination. Can we attribute statements in a brief by the lawyers representing the president that tell us what definition he used? Can we attribute that to the president from the PI oppositions below? I don't think that we – I don't think that we below conceded anything with regard to how the president was interpreting national security. There are certainly ways – even if this court thinks that that is one way that the president might have been thinking when he excluded the Department of Treasury, there are certainly other ways that are certainly consistent with any reasonable definition of national security. Again, the Secretary of the Treasury is a member of the National Security Council. The Department of Treasury investigates fraud, investigates financial crimes. That's investigatory work. That's the Office of Foreign Asset Control as well. That's right. That's right. Just to be clear, I do think courts ought not second-guess any determination like that. The concern would be if the record reveals or suggests that the president didn't make those determinations. Instead, there was a meeting where they applied the definition that the government defended below, and they applied it to each agency. And the court absolutely should not be second-guessing fact-based, policy-based determinations. But if it is just a purely question of statutory interpretation, that seems like something a court has to do. So, again, I don't think that you can attribute necessarily the fact sheet to the president. I think that even if the government has relied on Oak Ridge as one reason that the president's determination was correct, I don't think it has asserted that the president was applying and only applying the definition of Oak Ridge and to the exclusion of any other definition of national security, certainly. Does the statute require the president to, or seems to on its face, to designate only a subdivision if only that subdivision has a primary responsibility? No. The statute allows the president to designate an agency or a subdivision as long as the agency or subdivision has as a primary function intelligence, counterintelligence, investigation, or national security work. Is it reasonable to say that a department has a primary responsibility for national security work when some very small subdivision thereof does have all of the work, all of the national security work in that department? Yeah. I think you have to look at the circumstances as a whole. I don't think that it is necessarily the case that because one part has a certain primary function that it is necessarily the whole's primary function. It certainly can be. But doesn't the president then have some obligation to specify what really, where it really is the primary function, since the consequence is overwhelmingly felt by people who don't have that? I think the president could say this agency, Department of Defense, Department of Energy, has as a primary function national security work. And even if there are subdivisions that do not, that is still the primary function of the agency. And the president doesn't need to, you know, go to a lower level. That's the primary function at the departmental level. That's correct. I'm asking you to assume it's only at the subdivision level. So I don't think that the president, I don't think that that was the way that the president acted in this executive order. So there are certain subdivisions that are excluded where the president did not exclude the department, the agency as a whole. And so the president clearly was not just, you know, looking at one subdivision saying they have a primary function of national security. Therefore, I'm going to exclude the entire agency. The president did do tailoring. What do you make of the executive order's delegation to the secretaries of veteran affairs and defense to reverse the executive order with respect to subdivisions of their departments? So. Now, the veterans affairs did do that and then rescinded it some months later. That's correct. About six months they. That's correct. The secretary of veterans affairs rescinded his determination. Plaintiffs haven't challenged that delegation of authority. I don't think they have standing to because. I'm wondering whether it means that the delegation here that's relevant is to the secretary of defense and to the secretary of veterans affairs and not the president. He did say, you know, scour this executive order, and if you think it's appropriate, undo any exceptions for subdivisions. And they did, and they didn't depending on which secretary. So, maybe he's done all he should do on that. So, the president was exercising his own authority invested in him by Congress when he excluded the subject for these agencies and subdivisions. From the visions of the, thanks have not challenged his. Subdelegation of authority to the secretaries, and I don't think they would have standing to. No, I realized that I thought it was perhaps something that would ameliorate any problem. If we have it with the secretary having, pardon me, the president having overly broadly delegated pardon me, overly broadly excluded. Employees of and veterans affairs. Yeah, I think that absolutely, you know, to the extent that the secretaries exercise that authority, because they determined that the president has acted over broadly. I think that certainly does ameliorate any problem. They haven't done so here, or the secretary of veterans affairs did, but then rescinded. And the president didn't do it with respect to any of the other several departments that were excluded. That's correct. And, you know, that was in the, it's in the president's discretion to determine whether once you've made these determinations to decide whether to exclude agencies and then whether to sub delegate authority to the secretaries. I'm interested in here in exactly how far the president's discretion goes, because in some of the other cases where we've set a claim with unreviewable, the president. Had complete discretion, you know, close the base don't close the base for any reason at all. Right? And even in, like, Dakota central telephone. The president could take actions whenever he shall deem it necessary for the national security here. The statute is it's not quite as open ended. He has to make a determination. That's the primary function is about national security, et cetera, et cetera. Right? And there's, there is. It is a presidential determination, but the statute provides certain criteria for that determination. So how do we think about that in terms of review ability? So, as an initial matter, I do think that at the very least, the 2nd determination in the statute is just like that in Dakota central. So, your honor quoted the grant of discretion Dakota central whenever he shall have whenever he shall deem it necessary for the national security or defense 7103B1B here. Whenever he determines that the provisions of this chapter cannot be applied to that agency in a manner consistent with national security requirements considerations. It's certainly the same amount of discretion that's in the president with regard to each subsection because it's consistent with national security requirements and considerations. And it's like, wholly discretionary for the president. That's right. Exactly. As in Dakota central. This is something that is the president is the expertly executive branches is the expert Congress. Also, to some extent in deciding what is necessary facially unreasonable definition of national security. Right? You agree with me that's a thing in court should review. I think that if we're clear that the president, we're not abiding by the terms of the statute. The statute wasn't applying was acting for completely different reasons. Other than those provided by the statute, that could be the basis for all. I apologize for interjecting, but this is my fundamental question. Your arguments about non reviewability suggests that the president ought to almost always win in a case like this. But the fact that there are statutory terms, national security primary that can be judicially reviewed in edge cases means that your threshold argument that courts never review any determination under the statute is at least on a shaky ground. I think that the plaintiffs claim here is analogous to the claim that the plaintiffs made in Dakota central where they said that there was the circumstances were not present where the where the president could reasonably make the determination that taking control of the telegraph and telephone systems was necessary for the national security or defense. And so they necessarily, I think, we're asserting that the president had either just acted without regard to the requirements of the statute or had misinterpreted the statutory terms, national security or defense. And nonetheless, the Supreme Court there said, this is a matter entrusted to the president's discretion. It's not reviewable by courts. Mr. Apple, did you previously say in response to judge Garcia's questions that we could review if it was. Facially, not about national security. So, I mean, then it's. Did you can see that? So my excuse with judge Garcia, I think was after we get to the question of whether there's an ultra various claim for a matter that is entrusted to the president's discretion. I think that we had agreed that we were talking at the point where the court has decided that you can make such an ultra various claim here. Once you're applying that ultra various standard, I think the question is whether the president has just ignored the terms of the statute. But again, I do think that you have that threshold review ability. So, but it's, but I guess the question is, what is the relationship between those things? So, if we conclude that. You know, if we conclude that we're at that stage, and the president has made that type of determination, does that affect does it kind of go back to whether it is reviewable in the 1st place? I don't think so. The question is, how do these things are starting to blur together? Yeah, and I do want to make clear because these are, I think, separate questions. The 1st question, once you get to the merits, the 1st question is whether this is the type of statute where Congress has entrusted. Discretion to the president, and there's no basis for judicial review of that discretion. We think the answer is yes. Again, comparing to Dakota Central. I know I never finished my answer to your question. So, there's no statutory provision that is amenable to ultra various review. That's correct. That's correct. You interrupted your answer about the 1. yes, even subsection be 1. the statute makes clear that the president may exclude an agency when the president determines the agency has as a primary function such and such work. And Congress could have said the president may exclude an agency that has as a primary function this type of work if the president determines it's necessary for national security. But Congress was clear that the even the 1 is a determination for the president to make, and that's a vesting of discretion in the president. It's not a judicially findable fact. And I think there's good reason to think that Congress would want to do that. Whether an executive agency performs national security work is really a question. The president is best situated to determine with the president's understanding of the national security threats with the president's understanding of how agencies work together, how they work independently to address those threats. And it's not something that the courts have particular expertise in. So, there's no difference in terms of our reviewability between this statute and a statute that said the president can exclude agencies whenever it determines it's in the interest of the United States. I think that's correct. Congress has set out guidelines that the president has to apply. I don't think that there is no statutory cause of action, certainly. Congress could have also set out this exact same statute the president makes the determination that also provided a cause of action. Here, there's no cause of action. It can create a statutory cause of action. It can, of course, amend the statute to take away that discretion from the president. But here, Congress hasn't done those things. Further questions? We ask the courts to vacate the preliminary instructions below. Thank you. Yes. I'm Bar Shah on behalf of the Appellee National Treasury Employees Union. The executive order here nullified nearly all of Congress's statute. It eliminated the collective bargaining rights of three-quarters of the federal employees who had them. And the government argues that if the president wants to undo all of the statute's coverage, he can do it. And the courts can't do anything about it so long as he invokes the statute's narrow national security exemption. I'd like to address three things today. First, the jurisdictional question that the court discussed with my friend on the other side. Second, why our ultraviarious claim is reviewable under this court's precedent and likely to succeed. And third, why the district court's reputable harm holding, which is based on extensive factual findings in court of appeals precedent regarding what is lost when employers do not recognize unions, is correct. First, on jurisdiction. The government has presented its jurisdictional argument to 12 judges, including seven on this court, and none has indicated any agreement with it. Judge Garcia asked if the government's taken a position on the authority's jurisdiction. It has. In the OPM guidance that was issued contemporaneously with the executive order, OPM stated, and OPM is a defendant in this action, OPM stated, quote, a union no longer has standing to file an unfair labor practice charge against an excluded agency or subdivision because that agency or subdivision is no longer subject to the provisions of the statute. But Mr. Shaw, I mean, on a jurisdictional question, irrespective of the party's, you know, arguments, we have an independent obligation to determine our jurisdiction. Indeed, Your Honor. So even if the government takes arguably inconsistent positions, we still have to determine whether the district court had jurisdiction here. Yes, Your Honor. Here, though, the party's position should inform the court's analysis, and here the party is agreeing. If you're an excluded agency or subdivision, you are outside of the statute's coverage. That's what OPM said at JA-77. Is that a different question, though, about whether the FRA or the board has the authority to determine its own jurisdiction? Well, I think that's a different question. You know, it may well be that, you know, if the authority concludes that the EO is valid, then it won't have jurisdiction. But it has jurisdiction to determine its jurisdiction. Yes, Your Honor. So the party's positions only get things so far. I would agree with Your Honor there, though I do think it informs the analysis. And even as to the Department of Treasury, another defendant in this action, the government has stated to a different federal court, this one in the Eastern District of Kentucky, that the Department of Treasury is outside of Chapter 71, our statute. So, therefore, the government, in the action it filed against NTU, said federal district court jurisdiction is appropriate. Those things are not as positive, I agree with Your Honor, but they inform the analysis. So Judge Rau's question was, or a version of it is, will the FLRA decide a challenge to the EO's validity or not? And it seems like no one is really sure, or do you think they will or they won't, and what evidence do you have for that position? The authority is not going to decide that question if it follows its precedent. It will dismiss any action before it involving an excluded agency for lack of jurisdiction if it follows its own precedent. The key question is, in any of those cases, did the union try to dispute the EO's validity? And the FLRA said, I can't consider that. We're dismissing. I don't believe that occurred, Your Honor. I think, you know, this situation really stands alone and precedent only guides us so far because of the extreme facts of this situation. We've never had... Why are the unions, according to the government, the unions have asked the FLRA to hold these cases in abeyance waiting for this court's decision. But why not let the authority go forward? Because certainly, well, I assume at least it's likely that whatever they hold on that matter, then the unions could get direct review from that decision in the Court of Appeals. So why would that not be sufficient in terms of meaningful review, right? Irrespective of what they decide. I mean, if they decide they agree with the EO, EO is valid, you know, you can come to the Court of Appeals. But, Your Honor... Exactly, as opposed to through the district court. So, but the unions apparently, I don't know if that's true. I mean, you can tell me if it's not true that they've asked the authority not to decide the question. So, Your Honor, in every show cause order the authority issued, it cited its own precedent requiring dismissal of actions against excluded agencies or subdivisions, foreshadowing the likely outcome of, for each of those cases. Irrespective of that outcome, you could still come to the Court of Appeals from that outcome. So two things there, Your Honor. One is our request to the authority to hold cases in abeyance was to say, was a protective request, number one. But more broadly, true, an authority dismissal could be appealable to a Court of Appeals. But there's no case, there's none, in which an unregulated party has been forced to go through the statute's administrative procedures. And here there's no dispute between the parties that the defendants here in NTU's case are unregulated by the statute. That's a central piece of the analysis. But here's the other, and it goes to the type of claim dialogue that occurred earlier this morning. And that centered on this court's decision in Loy, for example. And, Your Honor, Judge Ginsburg, you asked if any subsequent decisions have perhaps painted Loy in a different color or changed the analysis in some way. And the answer is the Supreme Court's decision in Axon Enterprises does add a pragmatic loss to the analysis here that's highly relevant. In Axon, the court talked about how there's a difference between a 30,000-foot question, a gateway question, as Judge Garcia came to this type of question, versus a more granular question as to an agency decision or agency procedure. Where it is that 30,000-foot question, that is the type of question under Axon Enterprises where federal court jurisdiction is appropriate. Here it's nothing like Loy where they were trying to prompt the authority to act in a very discreet way to prompt an FLRA representation election. That's not the type of narrow agency action that's at issue here. We're talking about Congress's entire collective bargaining statute being nullified in terms of three-quarters of its coverage. That's an entirely different question than the types of discreet, granular questions that Axon spoke to in terms of being appropriately channeled to administrative agencies. So how does this court draw a line between what I take you're suggesting are sort of questions that are too big for the statutory scheme? Because I take it that NTU agrees that this is a comprehensive scheme where Congress intended a certain amount of channeling over statutory questions. So do you have any cases where we've carved out, you know, big questions? Like once you decide that, like, the agency has expertise over the statute in general, why would certain statutory questions be carved out from that to go to district court? And how would we possibly draw that line? So two things, Your Honor. One is despite the existence of this comprehensive scheme, we're on the other side looking in. We do not have access to it. That's our position in the government. It's just that if you're an agency defendant in our action, you are outside of the statute. But more broadly. You mean outside the statute because of the EO.  So we have to assume that EO is valid. Your Honor. And not be kicked out of the scheme. Your Honor. And then you want a ruling from us to say that the EO is invalid on the merits. Right. That's a very, very strange posture to be in. Well, that's just a distinction between the facts. We have been kicked out of the statute. We have been excluded. Versus the remedy we seek, which is declare the executive order unlawful and bring us back within the statute's coverage. But the fact that you say has occurred is only if the president's EO is lawful. And your position is that it's unlawful. So maybe you are within the statutory scheme. Two things there, Your Honor. I think the fact that we're relying on is the fact that the EO issued and is in effect. Not as lawfulness. It issued. It's in effect. We do not have access to the statute's administrative procedures. That's the primary thing that we're relying on here. But that's not really the Thunder Basin question, right? The Thunder Basin question is at least arguably a more formal question about whether such a statutory scheme exists and whether the claim is of the type that can go through that scheme. And this is where I think, Your Honor, that Axon does very importantly add a pragmatic gloss to the Thunder Basin framework. You know, it speaks to whether judicial review would come too late, for example, to be meaningful. Here, unlike Thunder Basin itself, where it was a garden variety mining enforcement dispute where the mining company could still continue on, here we've had two-thirds of our workers taken away. We can't collectively bargain for them. Their rights are gone. They can't take a much bigger action. But that doesn't tell us about the Thunder Basin factors, does it? I mean, the Thunder Basin factors don't account for that type of, you know, oh, this is a major question, and so we get out of Thunder Basin or something like that. Well, Axon Enterprises does speak to that, Your Honor. It talks about a 30,000-foot question versus a more granular question. And here, indeed, it is a 30,000-foot question about the sweeping, unprecedented-in-scope executive order that nullifies most of Congress's comprehensive federal labor relations scheme. Are you arguing that the delegation in the statute is invalid, that this authority that's been delegated to the president is invalid? I didn't see any argument like that. No, Your Honor, we're not. What we're saying about the statute is 7103b1 has discernible limits that should be imposed by this court. That it's not the Dalton-type scenario where it's unlimited discretion to close military bases. There are discernible limits in 7103, whether it's the primary function language, the national security language, or the final subprovision that encourages the president to take one more look, even if there is an agency or subdivision with the primary function of national security work, to make sure that they still, nonetheless, cannot be covered by the statute consistent with national security. Those are discernible limits. It's this court's obligation. Going back to the jurisdictional question, one 30,000-foot view of this is the one you suggested, that this is a gateway threshold question which should be resolved in district court. The government's response would essentially be, sure, but it's still a dispute about a provision of this statute, and so it should go. This doesn't come up very often or ever, but the FLRA is the one with expertise over the statute in general, and I would just like to hear how you'd respond to that framing of the argument. Your Honor, I believe that goes to the second two factors of the Thunder Basin Framework, which, as Axon describes, those are intended to give the agency a heightened role in matters it customarily handles and can apply distinctive knowledge to. The authority doesn't customarily handle these questions. It's never decided whether an executive order like this is valid or not. So it cannot apply its distinctive knowledge to that question, especially in this day and age, post-Loeb or Bright, where anything it says will not get deference in any event. It's not really about deference. I mean, an agency can have expertise in interpreting its statute without necessarily having to get judicial deference on that question. Those are two separate legal questions. Well, it goes to the value of that determination by the administrative agency, but regardless, the authority doesn't handle these questions. It has never decided a question like this regarding the national security exemption. So the unions make a number of, you know, kind of functional arguments about how hard it is to get reviewed before the FLRA or the board in this context, but the government points to the fact that it can petition for clarification, that any party can petition for clarification. Is there some reason why that is not an adequate way of getting reviewed by the FLRA? So, Your Honor, we're not arguing that it's hard to get authority review or that it— Well, you've made a lot of arguments that it's impossible. There's no general counsel, even if there were, and they decided not to prosecute a ULP. And there are a lot of these functional arguments that you can't really get this question before the authority. There are a lot of arguments like that that have been made, right? So there is this petition for clarification. Is there any reason to think that that's not available here? Because that was—I think it was raised in the government's reply brief. So I want to give you an opportunity to respond to whether you think that is inadequate in some way that hasn't been briefed. Yeah, I think as to an excluded agency or subdivision, one that's been taken out of the statute's coverage, if a union were to file a unit clarification petition to try to override that executive order, that would be a meaningless exercise. That wouldn't— But it's not a motion for clarification to override the EO. It's a petition for clarification to determine whether the EO is consistent with the statute. And it may well be that the, you know, FLRA says, yeah, we think the EO is valid. But then you can get appellate review. And you're an article-free court. So why do you have to be able to have district court review? So a unit clarification petition, it goes to employees who you think should be covered, whereas the executive order here, relying on a different part of the statute, carves out agencies or subdivisions. So I do not think you could clarify through an authority petition to have, say, DOD workers covered by the statute while the executive order exempting DOD is on the books. But why do you not think that? Why is that not possible? Because— You haven't explained why it's impossible. You might think that the authority is going to disagree. But why is it not a possible avenue of review? Well, two things there, Your Honor. I think the authority would be bound to disagree in light of the executive order. But then that is not an appealable determination. Why would that not be appealable? Under the statute, unit clarification petitions are not appealable to a federal court. What is—can you cite a provision that says that? It goes to 7123C. So only decisions by the three-member authority are reviewable in a court of appeals. The unit clarification petition would be decided by the regional director. But isn't the decision from the regional director appealable to the authority? That is appealable to the authority. I think there may be a carve-out. If it's appealable to the authority, then the authority would make a decision, and then that decision would be appealable to the court of appeals, correct? So 7123A.2 talks about how determination is involving an appropriate unit determination, which is what we're talking about. Those are not— I'm not sure why we're talking about a unit determination as to which employees are in or out of a bargaining unit. I thought we were talking about an obligation to bargain. A clarification petition for that purpose would not be about unit determination. It would be about saying, I'm the real union. Tell them that they've got to bargain with me. So that type of argument where we're saying we are the—we should be the exclusive bargaining representative of this unit. The units have been determined. You already went through that some years ago. You know what your units are. You don't need clarification on that. Right. I took your Honor's question to be about determinations about the scope of our units, but I may have misunderstood that question. No, I mean, I think it's about the—hold on. Can I try a version of it, which is that the statute that we're focused on, 7111B2, says a petition can be filed by any person seeking clarification of a matter relating to representation. So just on a—reading that in a vacuum, the question rises, can't you file a petition like that, or maybe why can't you, that says clarify that we're the proper representative because the EO is invalid. I want to give you an opportunity to say. Humphrey says tell the world that I'm the real commissioner of the FTC. Trespass plaintiff says tell the defendant that it's really my land, therefore he trespassed. Yeah, so with that type of petition, Your Honors, and assuming it would go to the three-member authority, and then could go to a court of appeals, I think that still misses sort of the two fundamental points that we're resting on, which is, number one, these Chapter 71 procedures, to include this one, are not available to us under the government's view or ours right now. But then looking to the axon gloss on the Thunder Base Framework, the types of questions here are the broader 30,000-foot questions that the Supreme Court has said belong in federal district court as opposed to before the administrative agency. Your Honors, on judicial review of our claim— One last question. We said—I think we've covered this. I just want to confirm because you didn't really have a chance to address it in your briefs, but we're obviously focused on the Loy case, and you've mentioned one distinction is, based on axon, that may or may not be persuasive. Do you, just standing here, have another reason that the Loy decision would be distinguishable? Yes, so Loy, as Your Honors noted this morning, the key phrase was, you know, was there arguable jurisdiction? Here, again, the parties' positions are aligned. They are not—there's not arguable jurisdiction here because we are outside the scope of the statute. But Loy is, I think, a good example of a discrete situation, not the 30,000-foot question. This was about a single agency and whether a representation election should be held by the authority. So that's much more the Thunder Basin Garden Variety Statutory Claim versus the 30,000-foot claim that we have here. Thank you. Is there any questions?  Thank you. I think both of you are over here. Okay, thank you. Yes, thank you. Good morning. Good morning. May it please the Court, I'm Jason Walta for the Federal Education Association and the other educator unions whose members work for the DOD Educational Activity Schools. With my limited time, I'd like to focus on, I guess, three issues. One, I want to—I don't know if we've quite flogged the channeling issue to death yet, but there's one point I would like to make. You know, my understanding from the government's argument is that, you know, they, I think, essentially concede that, you know, an unfair labor practice charge brought right now is a graveyard of unreviewability. I think they have to concede that a grievance right now is a graveyard of unreviewability because the agency isn't going to process the grievance. So what they're left with is to argue that your meaningful review under Thunder Basin, under Axon, is kind of the happenstance that you have something already in front of the agency or the happenstance that you have something in front of an arbitrator. What about the petition for clarification that we were just discussing? Your Honor, I think there are two problems with that one. One is that it would just be kind of passing strange for Congress to have intended for your route for review to be, to kind of misplead and abuse the unit clarification petition. I mean, there's no dispute about which specific employees are in or out of the unit, right? And so to kind of... A unit determination. It's not a unit... It's not a unit determination at all. It's a matter of affecting concerning representation of a different part of that statute. Precisely. It would be a misplead and kind of abuse that. But anyway, I do believe it's unreviewable under 71-12, the unit determination. Why do you believe that? I believe, I don't have the text in front of me, but I do believe it's unreviewable under 71-12. I don't know what the mispleading would be. You'd say, you know, there's an EO that purports to exempt these agencies and subdivisions, and we want to clarify whether that is valid. Well, but it's not a general clarification petition. It's a unit clarification petition. Specifically, which employees are in or out of the specific unit. There's no dispute between the parties about what the constitution of the unit is and whether employees are in or out. Are you saying that a clarification petition has sort of some kind of term of art meaning? It has a very well-established term of art meaning about who is in or out of the unit. So it is in existence, not the existence of the unit. So a unit determination and a petition for clarification are the same? Well, a unit determination is really at the initial. Okay. A petition for unit determination and a petition for clarification are the same thing? They're not the same thing. They're separate things. The unit clarification asks for an existing unit, whether additional employees should be added in or existing employees should be taken out. That's what a unit clarification petition is about. It's not about the employer's obligation to bargain. This is a person alleging any person seeking clarification or an amendment to a certification than in effect. That's what you're describing. Or a matter relating to representation. It's something else. The unit clarification petition in particular is precisely that, is who's in and who's out. So you're saying the statute's got an extra clause in it that doesn't add anything? Not that it doesn't add anything. Or a matter relating to representation. It can't be that that's just the same thing, clarify the unit or amend the unit. Well, that is how the statute defines clarifying the unit, who's in and who's out. This is hopeless then. Frankly, that's ridiculous. You're saying that A or B is what the statute says, and they both mean A. For purposes of a petition for unit clarification, what the authority is being asked to do is to determine who is in and out of an existing unit. Right, and for a matter relating to representation, that's got to be something different. It's another clause. I don't believe that's true, Your Honor, and I do believe that any of that. So it's just surplusage on the statute. It doesn't add anything. That's a loser. You've got to do better than that, really. Fair enough, Your Honor, but I do believe that that is not really what that petition is for and that in any event it isn't reviewable, and that the idea to say that your opportunity for meaningful judicial review should depend on the happenstance of already having a matter in front of the FLRA or already having a matter in front of an arbitrator just can't be the case. I agree with you on that. So I'd like to turn a little bit to the merits and talk a little bit about the Supreme Court's decision in Cole v. Young, which we haven't discussed yet, and why it should really be seen as defining the contours of this case and going very much to the question, Judge Garcia, that you raised about the definition of national security. Which case? Cole v. Young. But not just as to the application of the definition of national security, but also going to the availability of review, the presumption of regularity, and why the FEA plaintiffs are likely to prevail on the application of ultraviarious review. Also, if I have time, which I doubt I will, I'd like to talk a little bit about the overall structure of the statute and why this national security provision that we're talking about here in the context of the statute really needs to be construed very narrowly. So Cole v. Young, it dealt with a 1950 act that bore many similarities to 7103. The law did two things against the backdrop of an existing veteran's civil service law that provided for just cause protection and appeal to a civil service commission. First, it changed that backdrop rule for certain designated agencies and any other agencies that the president designated for national security purposes. And it changed that backdrop rule by saying that the head of the agency could dismiss an employee based on national security concerns. President Eisenhower executed an executive order in 1953 that included the entire federal government within this 1950 law. And shortly thereafter, Mr. Cole, the plaintiff in the case, who was an FDA food inspector, he was summarily terminated on national security grounds. And he first appealed to the civil service commission, which rejected his claim as jurisdictionally barred. They said they were ousted from jurisdiction. And then he sued in district court, alleging that his firing was ultraviarious. And the main question before the Supreme Court was the definition of what is national security. And the government told the court in that case that this was a matter that was unreviewable. It's unreviewably committed to the executive, the definition of national security here. But the court rejected that. And the court held that to accept the government's position in that case was improper because it would allow this narrow exception for national security to swallow the entire statute and deprive employees of the protections that were meant to be broadly applicable to federal employees. So the court concluded that the term was limited to comprehend only those activities of the government that are directly concerned with the protection of the nation from subversion and foreign aggression. And it specifically rejected a version or really precisely the conception of national security that you see in the fact sheet. It rejected the idea that national security could be defined as simply those things that contribute to the strength of the nation only through their impact on the general welfare. And then in that case, the court held that because the agency had not- Is that court judicial definition of national security applicable to all other statutes that use that term? Well, I think if we're doing good textualism, it is the definition that applies here. This is a decision that was on the books when Congress turned its mind to Chapter 71. It was a definition of national security from a very analogous context. It doesn't matter here that the statute doesn't say the president can exempt agencies that relate to national security, but that the president determines whether to exempt for national security reasons, right? So the president is making a determination about national security. Right. Is there any space between that and a statute that just talks about national security in general? I don't think so, Your Honor. Actually, if you put the statute in Cole next to the statute next to 7103, 7103 is much more restrictive than the statute that issue in Cole, particularly in a couple of respects. First, it doesn't just say that the president gets to act on national security issues. It confines that discretion into important ways. First, he has to decide that the agency or subdivision at issue has a primary function of national security, narrowly defined. And then it also says that the provisions of Chapter 71 cannot be applied. Cannot be applied. Those are Congress's words. Cannot be applied to that agency in a manner consistent with national security, again, narrowly defined. What about national security requirements and considerations? Sure. And that's pretty broad, right? So the president, who is the commander in chief, may decide that something cannot be applied consistent with national security considerations. Why would national security considerations be confined to a specific definition that a court came up with about what national security means? Well, I mean, I think that Congress was operating under the definition from Cole v. Young because that was a definitive definition of that term on the books at the time that it enacted Chapter 71. And that they included several restrictions on the exercise of the president's authority. As I take the government's position, their position essentially is that if you give the executive any discretion, they get all the discretion. And, first of all, I don't think you can square that with the language of the statute. And I think there's a danger in it, which is to say that it will then discourage Congress from giving the president even limited discretion because they're, you know, because judicially interpreted, some discretion now means all the discretion. And that might not be something that Congress is willing to give away in every circumstance. But returning to the idea that this was really a definition that was on the books and in front of Congress at the time, you know, Justice Frankfurter talked about, you know, when you take a definition of one statute and put it in another, you kind of bring the old soil with it. And the old soil here is obviously the definition itself, but it's also Congress's expectation of reviewability, right? In Cole, the court reviewed the firing as ultra-virus, right? Even though there was a civil service commission. And I think that you can anticipate the same to be true, a similar route for challenge to be true under Chapter 71 as well. Mr. Walter, you're over time. Let me just see if my colleagues have further questions. A couple questions. So you mentioned that the fact sheet, there are statements in the fact sheet that indicate the president may have used the expansive definition rejected in Cole. And the government says there's no reason you should attribute those statements to the president. What's your response to that? I mean, I guess I have a couple of responses. One, they only came around to that view in their reply brief on appeals. So I don't know that that's actually properly before the court. They hadn't previously ever asserted that the fact sheet didn't reflect the president's thinking?   But more to the point, these are statements from the executive. I mean, the executive wasn't required to make them. And also, the district court's decision on the presumption of regularity doesn't depend on the fact sheet alone, right? It depends on the enormous breadth of the executive order itself. And I think that what is very telling is that there are a number of instances where the government tries to justify the breadth of the order based on national security functions within agencies that are already excluded under an executive order. For example, they talk about, I believe it's at page 51 of their brief, they talk about the importance of the Department of Energy in safeguarding our nuclear stockpile. But the sub-agency within the Department of Energy that performs that function is already excluded under a 2008 executive order from President George W. Bush. Relatedly, if we thought it mattered that we needed to be able to tell what definition of national security the president used, one thing you could look to is the fact sheet. Is there anything else the court could look to to try to figure out, if it can figure out, what definition the president used? I think it's the fact sheet. I think it's the breadth of the order that seems not just the breadth, but also the kind of very puzzling line drawing that it does in other respects. For example, excluding all fire and police, even though those seem to have a fairly crucial national security function, or certainly more crucial than the K-12 teachers that I represent. But as I understand the government's argument, the president could exempt the entire federal government, root and branch, and that that would be both unreviewable and a proper exercise of the president's discretion under this provision. If they disagree with that, I'd be happy to hear why that's the case when they're back up on rebuttal. But that seems like it would be true. So if the nation went to war, you don't think the president could say collective bargaining is suspended across the government until the duration of the war is over? Well, we were at war at the time that President Nixon instituted the first collective bargaining executive order, so I don't know that those things are necessarily incompatible. That the president might not do that doesn't answer my question. Is there any reason why the president could not do that? It's certainly conceivable, but it's nothing close to the facts that we have before us right now. Well, I realize that. The question is how far your argument goes. Right. Why doesn't it go all the way and say, no, he couldn't do that? Well, I think the statute was written to anticipate, you know, I mean, it's written for the ages, right? It's written to be, you know, a safety valve within several safety valves that you find in Chapter 71 to allow for national security concerns. But, you know, then if the nation is at war, if there is an invasion, I mean, certainly those would be things that we would consider, but they're simply not the facts we have here. So for the presumption of regularity, the district court concluded that there was animus reflected in the fact sheet or the OPM guidance or something like that. Does that matter for this determination about the presumption of regularity? I mean, what happens, is it, does this court have to find that there was animus in order for the presumption to be rebutted? I don't think it needs to find that there was animus. What is the best non-animus related reason why the presumption would come from your perspective? Yeah, in the Hatchie v. Reagan case, this court talked about the presumption of regularity and said that, you know, you could defeat it by showing that the president was indifferent to the purposes and requirements of the act or acted deliberately in contravention of them. Those are legal questions. Yes. So would we review that? They could be legal questions and they could be fact questions. I think a determination that the executive was acting based on animus, I think that is a factual determination. I do think that that is a fact you add into the mix in determining whether the presumption was rebutted. I think that another factual issue is that the executive was pursuing aims that aren't included in the statute, which was to clear the path. Is that a factual question or a legal question? Like looking at the EO, does it comport with the text and purpose of the statute? Isn't that a legal question? I think the questions about kind of underlying intentions and animus, I think those would be factual questions. But I agree that things about the scope of it, about the scope of the executive order, and it's kind of unreasonable, over-breath, and under-inclusiveness, I do believe those are legal questions. Do motive and intention matter for regularity? They certainly can, yes. I mean, they're not dispositive one way or another, but certainly if there is a question of an improper motive, that can certainly go to rebut the presumption of regularity. Would you agree that if the EO said, I'm using the definition of national security that was rejected in COLE, that that might be an indication that? I think that would be an easy case. I think that would be the easy case. I think the case where the president exempted the entire federal government would also be an easy case. But I also don't think that's very far from the case you have in front of you. Thank you. It's just awesome. May it please the court. I'm Richard Hearn, and I'm here today on behalf of the American Foreign Service Association and the thousands of members of the U.S. Diplomatic Corps that AFSA represents. I'd like to begin by making a few observations on jurisdiction. A finding of preclusion in our case could and almost certainly would preclude all judicial review. With regard to a potential petition that the government refers to brought under Section 4111 of the Foreign Service Act, that, first of all, I would observe that the government has never argued before their reply brief in this case. That that was available to us. They didn't argue it below. It wasn't in the opening brief. And as this court noted not too long ago in the United Parcel Service versus post-regulatory commission, this court doesn't. Well, they certainly maintain that there is no jurisdiction. And then in response to the various union arguments that there's functionally no review, they add an additional avenue for review. So perhaps you can address why would the petition's clarification not be sufficient because your parties have not provided an answer to that. All right. Section 4111 of the Foreign Service Act is the process for obtaining an initial election to represent employees. We've already indicated to get an initial certification. We've already had an election. If you look at the language of it, it says if a reasonable cause to believe a question of representation exists, there'll be a hearing, and then the board shall supervise and conduct an election. We've already had an election. We are already the elected representative and have been for many decades of the employees of the State Department and USAID. What is the language to clarify a matter relating to representation? Why is that an issue here? And then the regulations also allow petitions to clarify any other matter relating to representation. I think in the content received from the contents of this language is to get an initial election and certification. So your answer is the same as Mr. Walters? Yes. There are two parts of the statute, but only the first part of the statute. If on the record of the hearing a question of representation exists, the board shall supervise or conduct an election on the question by secret ballot. It's only referring to getting an election. I don't have the full statute in front of me. This would be under 411B, the last full paragraph. Second sentence. Just as you say, it would make no sense to have a hearing on the unit determination or who is the appropriate bargaining representative. That's all, in fact, covered by the first clauses of B1 and 2, B1, B2, pardon me. Any person seeking clarification of our amendment to a certification then in effect. Your position is that there is a certification then in effect.  The government's position would be that there's a matter relating to representation because we've been directed or because the president has directed us not to bargain. Well, but then the board would order an election. That doesn't... No, that would answer the question. Resolve the matter relating to representation. It doesn't have to do with an election. We know if there is collected bargaining, we know who the agent is, who the union is. But if the whole sentence, the whole sentence refers ultimately to conducting an election as the remedy. And then to certify whoever wins the election. So what do you make of the last clause or a matter relating to representation? What does that tell me? As to whether... As to whether a majority of the employees... That refers to as to whether a majority of the employees wish to be represented for the purposes of collected bargaining by the petitioner. That's often raised, I've seen the phrase in the NLRA context as a question of representation. Right? Well, that's not your statute, I guess. But anyway, here it's a matter relating to representation. So I'm not sure why they would depart in that one respect. The... Okay. So let's take it a step further. Here's the larger thing that the government is arguing that we're surprised about. They are suggesting that subordinate officers of the president, who are now apparently removable at will by the president, can determine whether or not the president acted ultra-virus. And particularly that sounds astounding in the face of Executive Order 14215 earlier this year, which prohibited any subordinate officers of the president from advancing any interpretation of law that differs from that of the president and the attorney general. Under Executive Order 14215, the FLRA... Excuse me, the FLS, the Foreign Service Labor Relations Board cannot... Even if it's the case, which I'm not sure, given the due process concerns with adjudicative bodies within the executive branch. I mean, even if assuming you're right that they are bound to follow the president's directive, that still doesn't answer the question of whether you have to go through that channel. So you have to go to the authority, authority may disagree with you, but then you come to the Court of Appeals instead of to district courts. I still don't see how we get there because the primary thing that the government argued below was we follow an unfair labor practice charge, but that's still up to the regional director and the general counsel of the... Well, I mean, there's a petition for clarification because, to be honest, I haven't heard a good argument as to why there isn't the possibility of such a petition. So if such a petition is available, then, you know, even if you lose before the authority or the board, you get to come to the Court of Appeals. And that's...we like to believe that's meaningful judicially. Okay, I don't...my hesitation on that is in my career practicing labor law, I've never seen a petition for clarification be used for a purpose as large as this, such as this. It's just generally been limited to who is and who is not in the bargaining unit, whether new employees are in the bargaining unit, whether somebody's become a... Perhaps just because this is, as everyone has suggested, a kind of unusual circumstance. So it wasn't... It doesn't mean that that's not available. I believe there's a Ninth Circuit case discussing this general approach. I'm not familiar with it. I think Isinger v. FLRA, the 2009th Circuit case. But in any event. Okay. On the merits, we believe the district court correctly determined that the president lacks authority under the clear text of the Foreign Service Act to exclude the entirety of the Department of State and the entirety of the USAID from coverage by simply referring to the general national security and foreign policy character of the two agencies. The district court noted that the language of the Foreign Service Act, Subchapter 10, differs from that of the Federal Service Labor Management Relations Statute in that it only allows the president to exclude any subdivision of the department from coverage as opposed to that of the Federal Service Labor Management Relations Statute, which allows the president to exclude any agency or subdivision thereof. Being able to exclude only any subdivision of the department from coverage is not authority to exclude the whole department because to exclude particular subdivisions, to read that as permission to exclude everybody, would allow the exception to swallow the rule. It would also conflict with the language of 4-101 of the statute, in which Congress not only recognized the collective bargaining amongst the foreign services and the public interest, but, quote, that the unique conditions of foreign service employment requires implementation of modern and constructive cooperative relations between management officials and organizations representing members of the service. Congress would never have enacted the Foreign Service Labor Management Relations Statute, which we know is Subchapter 10. In the first place, if it had any doubts about, as a general rule, it would be consistent with national collective bargaining by the Foreign Service officers, would be consistent with national security. The Subchapter 10 is part of a larger comprehensive overhaul bill addressing the employment in the Foreign Service. Congress had 14 days of hearing, produced 258-page committee report. Congress knew what the Foreign Service officers were doing. But then they delegated this quite open-ended authority to the president to make exemptions. Well, we wouldn't categorize it as open-ended. We would categorize it as a narrow exception, which has never been used in half a century of collective bargaining at the State Department. Well, the fact that a power isn't used doesn't mean that it doesn't exist, as I think Judge Ginsburg earlier said. Well, one place where the government, and we agree, and the government says this on page 22 of the reply brief, is that the statute requires an individualized approach, an individualized assessment of what the primary function of each subdivision to be excluded is and whether collective bargaining is consistent with national security in each of the subdivisions. And the executive order, however, hasn't even identified a single subdivision to be excluded. It only identifies 12 senior officials of the Department of State and says that any subdivisions that report to them are excluded. There are, in fact, if we... I see you're over time. I see my colleagues have further questions. I need to look at page 21. Sure. Just a moment. Mr. Hearn, 21 of the reply brief is...  22. You're at the bottom, I believe. The government does not disagree with Plaintiff that the President must make the relevant determinations under 4103B with respect to each subdivision of the State Department of USAID that he excludes.  And then we can look at Joint Appendix, page 249, and we can see that there are seven... At the time of the executive order, there were 734 bureaus and offices in the Department of State to be reduced to 602. Those are the subdivisions. And if we look at the executive orders... If we look at the executive orders that the prior presidents have issued, we'll see very, very granular identification of entities within various agencies, specific offices... Is there anything in the statute that requires that? That requires... Such granular determinations? I think that... Maybe it's better practice, maybe it's advisable, but is it legally required? To balance the congressional objective expressed in Section 4101, that the unique attributes of employment of the Foreign Service requires collective bargaining, to manifest... To make that as manifest as possible, to balance the two things against each other, 4101, 4103, we would suggest that the exceptions of 4103 need to be as narrow and specific as possible to maximize, as much as possible, the congressional objectives in 4101. And how many of those 700 subdivisions are Foreign Service officers employed, or roughly how many? I don't know. I... More than one? Oh, I would... It's not something called the Foreign Service, and that's the agency? Right, that's correct. I would... I don't know, but I would... I'm going to... I feel confident to say that if they don't all include members of the Foreign Service, that most of them would include members of the Foreign Service. And so would you say that again? If they don't all include members of the Foreign Service, I think that we would find an overwhelming majority of those bureaus and offices have members of the Foreign Service. And that includes consular officers? And then there's consular officers and embassies. They... So... And we find it very hard to believe in the first two months of the administration that an analysis was made amongst all 734 bureaus, and the analysis all came out the same way. It's just the district court basically just... As the district court found, the government simply relied on the general national security character of the Department of State and excluded everybody. But the government... Why would that be irregular, though, where the statute talks about national security considerations and the State Department is involved with, you know, these types of issues? Yes, they're involved. Of course, they're involved in these types of issues. But the question is whether each one of the 734 bureaus, and it now may be reduced to 602 as part of the reorganization, whether each one of those, whether the primary function of each one of those is national security, and if so, whether collective bargaining is inconsistent with the national security considerations in each one of those offices. And as I said, the government concedes in page 22 of the reply brief that such an individualized assessment must be made. What's your best example of a subdivision? Office of Protocol. Office of Protocol? The Office of Protocol. Here are some. Pretty easy to give offense. Office of Protocol, Medical Affairs, Office of International Religious Freedom. Can we say that that's primarily national security? The terms in the statute is not just national security or national security considerations, is it? No, the primary function must be national security. Step one is the primary function national security, and if so, step two is collective bargaining in that subdivision. No, I understand that. I'm asking whether in the statute there's reference to intelligence, counterintelligence, or any other activities.  nobody, the government has not argued that it's anything other than national security. Let's assume it could be intelligence. Even assuming one of those, certainly the Office of International Religious Freedom isn't in the Office of Democracy, Human Rights, and Labor Protections, isn't it? I don't know about that. I mean, I know someone who served on the Religious Freedom Commission, and friction with certain other nations was an everyday consideration. That's foreign, I would say that's foreign relations, and not national security, perhaps. Okay, so you say it's just national security, not foreign relations. That's what the statute says. It's somehow separable. Yeah, okay, that's a bit of a stretch. Other questions? Thank you. Thank you, Mr. Hoppe. Mr. Hoppe, we'll give you four minutes. Thank you, Your Honors. I'm happy to answer questions about the jurisdictional questions, but we did spend a lot of time on that, and so unless there are questions, I will just turn to the merits. Plaintiffs give a very broad construction of the holding in Cole v. Young. In Cole, the Supreme Court assumed, without deciding, to be fair, what this Court had earlier held, that the President had validly expanded to the Department of Health, Education, and Welfare at that time, the authorities under the 1950 Act. And what the Supreme Court held in Cole was simply that the employee who had been discharged there, the secretary that had done that discharge, had not necessarily considered national security at all in effectuating that discharge, but had possibly only considered the employee's loyalty and not how that might relate to national security. Even under the definition of national security that Cole v. Young gives, however, we think it is entirely reasonable for the President to exclude the agencies involved here. Plaintiffs mention two-thirds of the federal workforce, three-quarters of the federal workforce, but I think that those statistics are a little bit misleading. Even if you just take the core, what everyone has to agree are agencies with primary function of national security work, investigative work, Department of Defense, the largest employer of civilians, the Department of Veterans Affairs, Department of Homeland Security, Department of Justice. Those four agencies by themselves comprise approximately 60% to 70% of the federal workforce. So when plaintiffs bandy about these numbers, what they're really talking about in the main is these really core national security agencies. Again, we absolutely think that the President reasonably determined the other agencies... Is that a fair assertion of the Department of Veterans Affairs? You say in the brief that it is the backup healthcare provider in times of war. Obviously, the default operation of the Department of Veterans Affairs is essentially a hospital and benefit system. How often has that wartime VA assistance been called upon? Do you know? I don't know how often that's been... The VA has performed that function, but the VA is critical. With an all-volunteer army, with an all-volunteer military, it's critical that the members of our military, the potential recruits, have the assurance that they and their families will be taken care of. And the Veterans Affairs ability to perform its function and to provide the care that our veterans and their families need is essential to the military's recruitment efforts. Mr. Kaplan, would you respond to the most recent, Mr. Byrne, pointing us to page 22 and 3 of your reply brief? Yeah, we don't disagree that under the subchapter 10 of the Foreign Service Act, which is somewhat different than the FSL-MRS, the President does need to make the determination at the subdivision level. But we certainly don't think that that means at the micro level of 734 bureaus. The President didn't here in the executive order simply say we're going to exclude the State Department from the provisions of the Foreign Service Act. The President did go through subdivisions of the State Department and say we're going to exclude these subdivisions. Each time it says a subdivision reporting to X, that might be 80 subdivisions, right? I think that it is, you know, if you go down the hierarchy, you can always, almost always, until you get to some level, you know, come up with more subdivisions. Subdivisions upon subdivisions and offices within subdivisions. There's no indication in the statute. Did the President think about what constitutes a subdivision? I can't speak to what the President was considering. I think the order doesn't reveal that he thought about the statutory finding that you concede is required. Actually, I think it's very clear that he did because with regard to certain other agencies, the President excluded the agency level. The fact that the President excluded the State Department... Those don't include the other two cases, but it's now Mr. Hearn has crystallized that there is a potentially meaningful distinction between those two cases and the AFSA case. Well, I think that... He did have to look at each individual subdivision and not just exclude groups of maybe they're 10, maybe they're 100, maybe nobody thought about it. Subdivisions. Well, this is exactly what I was getting at. The fact that the President took a different approach to agencies that operate under the FSLMRS and excluded them in certain circumstances, in certain instances at the agency level, and then with regard to the Department of State excluded at the subdivision level indicates that the President was considering the requirements of the statute of the Foreign Service Act. That doesn't... Well, we don't have to dwell on it, but that doesn't follow at all. The Foreign Service Act statute doesn't allow an agency-level exclusion. That's why you had to do it by subdivision. It doesn't prove anything that he was looking subdivision... He used the word subdivision. Well, I think that that goes back to the presumption of regularity, that we have to... That the court has to presume that the President was acting consistent with the requirements of the statute. And in the absence of any other information, certainly there's no evidence here that the President was not considering subdivision by subdivision, at least at the level the President issued this exclusion order. So, I wanted to let you get to the merits, but unfortunately I do have jurisdictional questions. But I hope you can help me. So, you've argued that they could raise this in a pending ULP case. I want to ask, if they filed a new ULP case today, do you know what would happen? Would the FLRA just dismiss it for lack of jurisdiction? I don't know what would happen. Nobody knows what would happen. I can't say what the FLRA is going to say, just like I couldn't say what the district court would hold on any question. But even if the FLRA dismisses it, even if the FLRA says, we can't even consider our jurisdiction, I think that would be incorrect. But even if the FLRA were to say that, this court certainly could consider the FLRA's jurisdiction on judicial review.  So, then your best case for something like that would be something like Elgin, which says, even if the FLRA, in that case it was the MSPB, can't consider a constitutional claim, you still have to bring it there. Elgin is very careful to say there will still be fact-finding because you are fundamentally, you're challenging, you're firing. And that's something the MSPB does. Here, the concern would be that what the Court of Appeals gets is an absolute nothing. It says, we don't have authority. We dismiss this for jurisdiction. There is no record like we have in our case that tells us the facts. So, I don't think that, first of all, I don't think that fact-finding is really necessary here. Again, you know, I think that the record could consist of these relevant documents. So, if fact-finding is important to resolve a case like this, that's a reason you agree the agency might not provide an appellate court that. I don't think so. So, this court also addressed that issue in Apki v. Trump. Their executive orders were at issue. The plaintiff said the FLRA doesn't have jurisdiction or doesn't have authority to invalidate the executive orders at issue. This court said,  the district court lacks jurisdiction. Even if the FLRA doesn't have authority to review the executive orders at issue, we can on judicial review. And it did not carve out, it didn't say anything, I don't think, about the possibility of fact-finding in the FLRA. Okay. And then, we've asked a lot of questions about 7111B and this language, a matter relating to representation. Do you know? It sounds like nobody has an answer to whether that allows you to file a freestanding petition of the type the government is arguing. Do you have a response on that issue? My understanding is that it does and that any decision on a 7111 petition would be subject to judicial review. The statute 7123 precludes judicial review of decisions under 7112. One reason to be concerned about whether that's true is that if it was true, I would have imagined it would be the very first thing the government would say in its district court briefing. But you went through three, took a long time to think of 7111. It might raise concerns that it's as clear as you're suggesting. My understanding is that there is the possibility of such a petition. The union would assert, would seek clarification that it is the representative of the bargaining unit and the government would assert it's not because the agency is excluded under this executive order and the FLRA would have to determine that and then the FLRA's order would be subject to judicial review. My understanding is that the union could assert such a petition, the FLRA could adjudicate it, and then it would be subject to judicial review. By determine that, you don't mean on the merits. It might just simply determine that it cannot address it. I think it probably could address the merits, but even if it doesn't, this court... That's a concern. If it doesn't address the merits, it just says we can't consider this. Even if it said that and it dismissed the 711 petition, this court or another court of appeals would have jurisdiction on judicial review of that dismissal order. Mr. Hearn also raised the question whether the FLRA would see itself related to this as having authority to question a presidential EO and that seems to raise the question. I don't know if you have a position on it, but that would also be a distinction from Lloyd, right? Because that didn't involve a presidential determination. I don't think that an agency's understanding of its authority... First of all, I do think that the court kind of addressed that in Appie v. Trump, which I mentioned earlier. Whether or not the FLRA has jurisdiction or authority to question, to override the presidency executive orders the court of appeals does on judicial review, that's enough to require channeling. Regardless, whether or not independent agencies have changed their position on whether they're bound to follow an executive order, I don't think that reflects on Congress's intent in the CSRA, in the FSLMRS, which was to preclude judicial review of these questions and channel claims to the FLRA and then to the courts, to the court of appeals on direct review of the FLRA's order. There's one interesting feature of... and not intended to be a gotcha question, I think it's a difficult issue. The way you just described what the jurisdictional analysis is is completely in conflict with what Loy says it is. It says the question is, is this issue arguably within the authority's jurisdiction to decide? And you said, that doesn't matter. And I agree that your version of it seems to track more directly the way the Supreme Court has treated the question under ThunderBase. So I guess if there is a question there, it's whether... how would you reconcile Loy's test with what seems to be the general inquiry that we undertake in these kinds of cases? So I think that... I think that Loy was applying the ThunderBase in factors and in particular, the first factor, which is the availability of judicial review as a clue to congressional intent. But ultimately, it is clear that what matters here is congressional intent, not whether there is necessarily or even arguably a method of obtaining judicial review through the statutory review scheme. And so even if it is absolutely clear on its face, as in Fausto, that Congress has precluded a judicial review of a question, nonetheless, the CSRA, FSL, and the rest can preclude district court jurisdiction of that question in first instance. Well, the court in Baker, although it concerned reviewability at this point, Judge Ginsburg, Ruth Ginsburg, said the congressional intent behind these schemes, all of them labor schemes, is to avoid multiple litigation in multiple district courts with divergent opinions and forum shopping. And to centralize everything in these various authorities seems to me equally applicable to review to jurisdictions. Absolutely. The plaintiff unions, each local could raise this in a district court under plaintiff's theory. In different district courts. In different district courts, exactly. There's probably a local in every district and you could have these suits in every district court eventually making their way to the court of appeals. That's not what Congress wanted with the CSRA. It wanted to centralize reviewing the FLRA and then in the courts of appeals or in the case of the Foreign Service Act, specifically this court of appeals. And if there were appeals from borders of the FLRA, as there are, do they have to go to this court of appeals or can they go to any court of appeals? Under the FSLMRS, I believe, I'm sorry, if the FLRA appeals. No, no. If there's an appeal from an order of the FLRA, it can go to any circuit in which the union can be found? If it arises under the FSLMRS, I believe it is any court of appeals. I'm not sure if it's any court of appeals where the union can be found, but it could arise in any court of appeals under the subchapter 10 of the Foreign Service Act, specifically the DC circuit. So even in that instance, does Congress even more determine to avoid a multiplicity of views? That's right, but then it's 12 views, as opposed to however many district courts. You don't mean 12 views on this court? Not on this court. I mean, the 12 court, regional courts of appeals. And I believe that that's the same under the MSPB orders. I believe it can be. I think that's right for MSPB. It can appeal to any court of appeals, not only this one. Again, we ask that the court reverse the preliminary or vacate the preliminary injunctions below. Thank you. Thank you. Thank you at all times.
judges: Rao; Garcia; Ginsburg